IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **GREGORIO TEJADA,** | 1:06-CV-644 AWI DLB |
| Plaintiff, | ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| v. | |
| **CON-AGRA FOODS, INC., a business entity, and DOES 1 through 50, inclusive,** | |
| Defendant. | |

This case stems from Plaintiff Gregorio Tejada's ("Tejada") termination of employment by Defendant Con-Agra Foods, Inc. ("Con-Agra"). Tejada filed suit in the Fresno Superior Court and Con-Agra removed to this Court on the basis of diversity jurisdiction. Tejada claims that Con-Agra: violated California Government Code § 12940, the Fair Housing and Employment Act ("FEHA"), by discriminating against him and failing to accommodate his disability, violated public policy by terminating his employment, was negligent by not attempting to accommodate his disability, and intentionally inflicted emotional distress. Con-Agra moves for summary judgment on all claims. Con-Agra's motion will be granted.

**FACTUAL BACKGROUND**

Tejada was hired in July 1994 to work at Con-Agra's Fresno facility, where snack food products, including pumpkin and sunflower seeds, are packaged and produced. See DUMF No. 1.[1] In 1999, Tejada began working as a Color Sorter in the production area and was responsible for operating machinery that removed defective pumpkin seeds as well as performing other job duties, including cleaning and maintaining equipment used to prepare, store, and transport pumpkin seeds. See DUMF No. 2; Horn Declaration at ¶ 2..

The physical requirements for a Color Sorter include lifting and dumping 50 lbs. bags of seed, and the employee is required to "go up and down stairs to reach work areas" and "climb ladders as needed." See DUMF No. 3. The job of Color Sorter requires "a lot of climbing" and the worker must climb a ladder from the packaging room on the first floor all the way to the top of the second floor (approximately 25 to 30 steps on the ladder) every 20 to 30 minutes throughout the work day. DUMF No. 4. If a person cannot climb steps and ladders, they are not capable of performing the job of Color Sorter. DUMF No. 5.

In August 1999, Tejada was diagnosed as having Deep Venous Thrombosis ("DVT"). DUMF No. 6. In August 2002, Tejada experienced pain in his right leg due to his DVT, which caused him to collapse while performing his job as a Color Sorter. DUMF No. 7. Tejada was transported by ambulance to the hospital where he received treatment and was placed off work by his doctor. DUMF No. 8. Con-Agra received a medical certification from Tejada's physician, Dr. Guerrero, on 9-12-02 advising that Tejada suffers from "chronic and acute" right leg DVT and would return to work after 9-14-02, but should "avoid knee bending and climbing." DUMF No. 9. Tejada returned to work on 9-16-02, and was assigned temporarily to the taper machine area with limited duties, but again experienced pain in his right leg on September 17 and 18, and was unable to go up and down stairs. See DUMF No. 10. Tejada was referred back to his physician, who placed Tejada off work from 10-2-02 to 2-2-03. See DUMF No. 11.

On 1-31-03, Con-Agra received a release from Tejada's physician advising that Tejada

---

[1] "DUMF" refers to Defendant's Undisputed Material Facts.

could return to full duty with "no restrictions" as of 2-3-03. DUMF No. 11. It appears that Tejada asked Dr. Guerrero to release him "without restrictions" because he needed to continue working. See Tejada Deposition at 71-72. Because Tejada had been off work for approximately six months, he was referred to a physician, Dr. Fujihara, for an evaluation. DUMF No. 13. While visiting Dr. Fujihara on 2-4-03, Tejada expressed his concern about returning to work and that climbing stairs and ladders might aggravate his DVT.[2] See DUMF No. 14. After visiting Dr. Fujihara, Tejada went back to Dr. Guerrero who issued a "permanent restriction" on 2-4-03, of "no stairs/platform climbing" and "no knee bending." See DUMF No. 15.

After receiving the permanent restrictions, Tejada applied for long-term disability benefits through Con-Agra and was approved to start receiving these benefits in February 2003. See DUMF No. 16. Tejada qualified for long-term disability benefits after it was determined that he was unable to "perform the majority of the material duties" of his normal occupation because of the restriction of "no stairs, no platform climbing, and no repetitive knee bending." DUMF No. 17. Dr. Guerrero forwarded medical certifications to Con-Agra advising that Tejada would be "unable to attend work" as of 3-4-03, and continuing over the next year through 4-1-04, while Tejada received disability benefits. See DUMF No. 18.

On 8-25-03, a letter was forwarded to Tejada by Jeff Horn, Con-Agra's human resources manager. DUMF No. 19. The letter stated that Horn could not hold Tejada's position as a Color Sorter open indefinitely, and that if Tejada got released to return to work, then Tejada should contact Con-Agra so that it could consider placing Tejada in a comparable position. See id.

During his disability leave, on 8-6-04, Tejada sent a letter to Con-Agra advising that he would like the opportunity to return to work and stating that he received his G.E.D. certificate and a certificate of achievement in computer literacy. DUMF No. 21. Thereafter, Tejada met with Horn and Suzi Lal, the human resources supervisor, to discuss Tejada's ability to return to work. See DUMF No. 22. During the meeting, Tejada stated that he obtained his G.E.D. and a computer literacy certificate and inquired about administrative positions at the facility. DUMF

---

[2] Dr. Fujihara's report indicates, *inter alia*, that Tejada's condition could be aggravated if Tejada continued to climb stairs and ladders. See Horn Declaration Exhibit C; Tejada Deposition Exhibit 8.

No. 23. However, Con-Agra had been eliminating those jobs since December 2001, and no vacancies had been available during Tejada's leave of absence.[3] Id. During this August 2004 meeting, Tejada was asked to identify what positions he felt he could perform in light of his permanent restrictions and Plaintiff stated that he could sweep. DUMF No. 24. Tejada was advised that Light Utility and Heavy Utility positions are not limited to sweeping and require individuals to climb ladders, stairs, platforms, and equipment in order to perform their job duties. DUMF No. 25. All production level jobs at the Fresno facility at Tejada's level of Color Sorter or below require employees to climb stairs and ladders to access their work areas as well as engage in knee bending which are contrary to Tejada's permanent restriction. DUMF No. 27.

Tejada continued his disability leave and was separated from employment with Con-Agra in February 2005, after his disability benefits expired and after being off work for about two and a half years. See DUMF Nos. 20, 26.

Tejada filed this lawsuit in April 2006, and alleged various state law causes of action that are predicated on alleged discriminatory conduct by Con-Agra due to Tejada's DVT disability.[4] Tejada did not file a timely opposition to Con-Agra's motion for summary judgment.[5]

## SUMMARY JUDGMENT FRAMEWORK

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Fortyune v. American Multi-Cinema, Inc., 364 F.3d 1075, 1080 (9th Cir. 2004). The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying the portions of the declarations (if any), pleadings, and discovery that demonstrate an

---

[3] According to Horn, since December 2001, Con-Agra has downsized its administrative jobs from 26 to 8. See Horn Declaration at ¶ 14.

[4] For purposes of this motion, Con-Agra assumes that Tejada's DVT is a disability within the meaning of FEHA. See Defendant's Memorandum at p. 4 n.1. The Court will make the same assumption.

[5] Tejada filed an untimely opposition (without explanation or permission) that did not comply with the Local Rules. In a separate order, the Court struck the opposition.

absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007). A fact is "material" if it might affect the outcome of the suit under the governing law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986); Thrifty Oil Co. v. Bank of America Nat'l Trust & Savings Assn, 322 F.3d 1039, 1046 (9th Cir. 2002). A dispute is "genuine" as to a material fact if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. Anderson, 477 U.S. at 248; Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006).

Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the movant. Soremekun, 509 F.3d at 984. Where the non-moving party will have the burden of proof on an issue at trial, the movant may prevail by presenting evidence that negates an essential element of the non-moving party's claim or by merely pointing out that there is an absence of evidence to support an essential element of the non-moving party's claim. See James River Ins. Co. v. Schenk, P.C., 519 F.3d 917, 925 (9th Cir. 2008); Soremekun, 509 F.3d at 984; Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1105-06 (9th Cir. 2000). If a moving party fails to carry its burden of production, then "the non-moving party has no obligation to produce anything, even if the non-moving party would have the ultimate burden of persuasion." Nissan Fire & Marine Ins. Co. v. Fritz Companies, 210 F.3d 1099, 1102-03 (9th Cir. 2000). If the moving party meets it initial burden, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); Nissan Fire & Marine, 210 F.3d at 1103. The opposing party cannot "'rest upon the mere allegations or denials of [its] pleading' but must instead produce evidence that 'sets forth specific facts showing that there is a genuine issue for trial.'" Estate of Tucker v. Interscope Records, 515 F.3d 1019, 1030 (9th Cir. 2008) (quoting Fed. R. Civ. Pro. 56(e)).

The evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Anderson, 477 U.S. at 255; Matsushita, 475 U.S. at 587; Stegall v. Citadel Broad,

Inc., 350 F.3d 1061, 1065 (9th Cir. 2003). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Juell v. Forest Pharms., Inc., 456 F.Supp.2d 1141, 1149 (E.D. Cal. 2006); UMG Recordings, Inc. v. Sinnott, 300 F.Supp.2d 993, 997 (E.D. Cal. 2004). "A genuine issue of material fact does not spring into being simply because a litigant claims that one exists or promises to produce admissible evidence at trial." Del Carmen Guadalupe v. Agosto, 299 F.3d 15, 23 (1st Cir. 2002); see Galen v. County of Los Angeles, 477 F.3d 652, 658 (9th Cir. 2007); Bryant v. Adventist Health System/West, 289 F.3d 1162, 1167 (9th Cir. 2002). Further, a "motion for summary judgment may not be defeated . . . by evidence that is 'merely colorable' or 'is not significantly probative.'" Anderson, 477 U.S. at 249-50; Hardage v. CBS Broad. Inc., 427 F.3d 1177, 1183 (9th Cir. 2006). Additionally, the court has the discretion in appropriate circumstances to consider materials that are not properly brought to its attention, but the court is not required to examine the entire file for evidence establishing a genuine issue of material fact where the evidence is not set forth in the opposing papers with adequate references. See Southern Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 889 (9th Cir. 2003); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001). If the nonmoving party fails to produce evidence sufficient to create a genuine issue of material fact, the moving party is entitled to summary judgment. See Nissan Fire & Marine, 210 F.3d at 1103.

**DEFENDANT'S MOTION**

**1.    Disability Discrimination – FEHA § 12940(a)[6]**

Con-Agra argues that Tejada cannot establish that he was "qualified" to be a Color Sorter because, at all relevant times he was under a restriction of no stair/platform climbing and no knee bending. That restriction was permanent, and Tejada acknowledged that the color sorter position

---

[6] The heading of Tejada's complaint indicates that he is alleging a violation of FEHA § 12940(a), but seems to focus on a failure to accommodate. In its motion for summary judgment, Con-Agra has treated Tejada's first cause of action as alleging discriminatory conduct under FEHA § 12940(a) and a failure to accommodate under FEHA § 12940(m). This does not appear to be an unreasonable interpretation of the complaint. Since Tejada has filed no timely opposition and has not otherwise challenged Con-Agra's interpretation of Tejada's complaint/first cause of action, the Court will accept Con-Agra's interpretation.

required a great deal of climbing.  A person who cannot climb stairs cannot be a Color Sorter.

*Legal Standard*

It is "an unlawful employment practice, unless based upon a bona fide occupational qualification … [¶] [f]or an employer, because of the … physical disability, mental disability … of any person, to refuse to hire or employ the person or to refuse to select the person for a training program leading to employment, or to bar or to discharge the person from employment or from a training program leading to employment …." Cal. Gov. Code § 12940(a); Hastings v. Department of Corrections, 110 Cal.App.4th 963, 971 (2003).   Thus, FEHA "prohibits discrimination based on an employee's physical disability." Green v. State of California, 42 Cal. 4th 254, 262 (Cal. 2007).  However, FEHA "does not prohibit an employer from refusing to hire or discharging an employee with a physical or mental disability … where the employee, because of his or her physical or mental disability, is unable to perform his or her essential duties even with reasonable accommodations, or cannot perform those duties in a manner that would not endanger his or her health or safety or the health or safety of others even with reasonable accommodations." Cal. Gov. Code § 12940(a)(1); Green, 42 Cal.4th at 262; Raine v. City of Burbank, 135 Cal.App.4th 1215, 1222 (2006).  In other words, an "employer may discharge or refuse to hire a person who, because of a disability or medical condition, is unable to perform his or her essential duties even with reasonable accommodation." Ross v. RagingWire Telcom. Inc., 42 Cal.4th 920, 926 (2008); see also Green, 42 Cal.4th at 262.  The framework for analyzing a § 12940(a) discrimination claim is similar to the federal *McDonnell Douglas* framework:

> First, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. The employer then must offer a legitimate nondiscriminatory reason for the adverse employment decision. Finally, the plaintiff bears the burden of proving the employer's proffered reason was pretextual.  The plaintiff can establish a prima facie case by proving that: (1) plaintiff suffers from a disability; (2) plaintiff is a qualified individual; and (3) plaintiff was subjected to an adverse employment action because of the disability.

Brundage v. Hahn, 57 Cal.App.4th 228, 236 (1997); see also Deschene v. Pinole Point Steel Co., 76 Cal.App.4th 33, 44 (1999). The plaintiff is a "qualified individual" for a position "in the sense that he or she is able to perform the essential duties of the position with or without reasonable accommodation." Green, 42 Cal.4th at 267; see Jenkins v. County of Riverside, 138 Cal.App.4th

593, 603 (2006). The essential functions of a position are "the fundamental job duties of the employment position the individual with a disability holds or desires." Cal. Gov. Code § 12926(f); Raine, 135 Cal.App.4th at 1222 n.4; Hastings, 110 Cal.App.4th at 970.

*Resolution*

The evidence shows that there is a problem with Tejada's *prima facie* case of discrimination. Con-Agra has shown that an essential function of the job of Color Sorter is the ability to climb stairs and ladders. See DUMF Nos. 3, 4, 5, 27. "If a person cannot climb steps and ladders, they are not capable of performing the job of Color Sorter." DUMF No. 5. Given Tejada's restrictions of no stair/platform climbing and no knee bending, Tejada was incapable of performing an essential function of a Color Sorter. There is no indication that an individual can successfully perform the duties of a Color Sorter without climbing stairs and ladders and bending his knees. Cf. Wilmarth v. City of Santa Rosa, 945 F.Supp. 1271, 1278-79 (N.D. Cal. 1996). Con-Agra's evidence indicates that all production jobs at the level of Color Sorter and below require climbing stairs and ladders. See DUMF No. 27. Further, the pictures submitted to the Court as part of this motion show a significant number of staircases that a Color Sorter and other employees must navigate. See Lal Declaration Exhibit B.

Con-Agra has sufficiently met its initial burden of negating an essential element of Tejada's claim/pointing out a lack of evidence on a necessary element. It was therefore incumbent upon Tejada to present contrary evidence to raise a disputed issue of fact as to whether he was a "qualified individual," but he has not done so. Since the evidence indicates that, because Tejada cannot utilize the stairs and ladders, he is not an otherwise "qualified individual," Tejada has failed to establish his *prima facie* case of disability discrimination. See Green, 42 Cal.4th at 262, 267; Brundage, 57 Cal.App.4th at 235. Summary judgment on this claim will be granted.

**2.     Failure To Accommodate**

Con-Agra argues that Tejada contends that he should have been reassigned to a new position as an accommodation to his DVT disability. Con-Agra relied on the medical opinions provided by Tejada's doctor, and those opinions stated that Tejada had permanent restrictions.

Tejada was also deemed unable to work for purposes of long-term disability. Tejada contends that he should have been reassigned to an administrative position, but there were no such positions available. When Con-Agra met with Tejada to discuss his ability to work in light of his permanent restrictions, Tejada said that he could "sweep." However, no positions entailed only sweeping, and the employees who do sweep are required to climb stairs and ladders. There is no evidence that any position was open that Tejada could perform.

*Legal Standard*

Under FEHA § 12940(m), it "is also unlawful, and separately actionable under FEHA, for an employer 'to fail to make reasonable accommodation for the known physical or mental disability of an applicant or employee' unless the accommodation would cause 'undue hardship' to the employer." Raine, 135 Cal.App.4th at 1222 (citing Cal. Gov. Code § 12940(m); see King v. United Parcel Service, Inc., 152 Cal. App. 4th 426, 443 (2007). "[T]he position for which an accommodation is required is the employment position the [disabled individual] holds or desires." Hastings, 110 Cal.App.4th at 972. The employee has "the burden of giving the employer notice of the disability." Raine, 135 Cal.App.4th at 1222. Once notice is given, the employer must take affirmative steps and the parties must engage in an interactive process in order to attempt to fashion a reasonable accommodation. See King, 152 Cal.App.4th at 443; Gelfo v. Lockheed Martin Corp., 140 Cal.App.4th 34, 54 ( 2006); Raine, 135 Cal.App.4th at 1222. An employer is only required to make a "reasonable accommodation," it is not required "to choose the best accommodation or the specific accommodation a disabled employee or applicant seeks." Raine, 135 Cal.App.4th at 1222; Hanson v. Lucky Stores, Inc., 74 Cal.App.4th 215, 228 (1999). Examples of "reasonable accommodations" include: "[a]ccessibility … [j]ob [r]estructuring …, reassignment to a vacant position, part-time or modified work schedules, acquisition or modification of equipment or devices, adjustment or modification of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar actions." Hastings, 110 Cal.App.4th at 972. "A reassignment, however, is not required if there is no vacant position for which the employee is qualified." Raine, 135 Cal.App.4th at 1223; Spitzer v. Good Guys, Inc., 80 Cal.App.4th 1376, 1389 (2000). The obligation to reassign an

9

"employee who cannot otherwise be accommodated does not require creating a new job, moving another employee, promoting the disabled employee, or violating another employee's rights under a collective bargaining agreement." Hastings, 110 Cal.App.4th at 978; Spitzer, 80 Cal.App.4th at 1389. "What is required is the duty to reassign a disabled employee if an already funded, vacant position at the same level exists." Raine, 135 Cal.App.4th at 1223; Hastings, 110 Cal.App.4th at 972. Additionally, an employer is not required to reallocate essential functions of a job to other employees as an accommodation. See Stoll v. Hartford, 2006 U.S. Dist. LEXIS 81781, *27 (S.D. Cal. 2006); Parish v. Consolidated Eng'g Lab, 1997 U.S. Dist. LEXIS 15879, *24, *31 (N.D. Cal. 1997); Wilmarth v. City of Santa Rosa, 945 F.Supp. 1271, 1278 (N.D. Cal. 1996). Generally, "the reasonableness of an accommodation is an issue for the jury." Prilliman v. United Air Lines, Inc., 53 Cal.App.4th 935, 954 (1997). However, summary judgment in favor of an employer on a reasonable accommodation claim may granted where the employer shows:

> (1) reasonable accommodation was offered and refused; (2) there simply was no vacant position within the employer's organization for which the disabled employee was qualified and which the disabled employee was capable of performing with or without accommodation; or (3) the employer did everything in its power to find a reasonable accommodation, but the informal interactive process broke down because the employee failed to engage in discussions in good faith.

King, 152 Cal.App.4th at 443.

*Resolution*

Tejada does not challenge Con-Agra's characterization of his claims. The evidence submitted indicates that there were no production jobs available at Tejada's level or below that did not entail climbing stairs or ladders or bending one's knees. See DUMF No. 27. Although it appears that Tejada wished to be assigned to an administrative position, the uncontroverted evidence shows that no administrative position was available. See DUMF No. 23. In fact, the evidence shows that these positions were being reduced at Con-Agra's Fresno facility. See id. Con-Agra was not required to create a new job for Tejada, promote Tejada, or remove a non-disabled administrative employee for Tejada's benefit. See Hastings, 110 Cal.App.4th at 978; Spitzer, 80 Cal.App.4th at 1389.

Besides an administrative job, the only accommodation suggested by Tejada was a sweeping job, but no such job exists at Con-Agra. See DUMF Nos. 24, 25; Horn Declaration at ¶ 15. Employees who work Light Utility and Heavy Utility positions sweep, but, like Color Sorters, they also are required to climb ladders, stairs, platforms, and equipment in order to perform their jobs. See id.; see also Lal Declaration Exhibit A. There is no indication that Tejada requested an additional accommodation or that any other accommodation existed that would have enabled Tejada to adequately perform a vacant job, given his permanent restriction of no stair/ladder climbing and no knee bending. Cf. King, 152 Cal.App.4th at 443 (noting that employee is generally responsible for letting employer know of specific, desired accommodations and for knowing his condition and the restrictions that ensue). Con-Agra has met its initial burden and shown that there was no vacant position available that would fit with Tejada's permanent restriction and no accommodation appears to have been viable. See King, 152 Cal.App.4th at 443; Hastings, 110 Cal.App.4th at 978; DUMF Nos. 23, 24, 25, 27; cf. Wilmarth, 945 F.Supp. at 1278-79. Tejada was required to produce contrary evidence, but has not done so. Summary judgment on this claim will be granted.

### 3.   Wrongful Discharge In Violation of Public Policy

Con-Agra argues that Tejada's interrogatory response shows that his wrongful discharge claim is duplicative of his FEHA § 12940(a) claim. Since his wrongful discharge claim is dependent upon his underlying discrimination claim, the wrongful termination claim also fails.

*Legal Standard*

In California, an "employer may not discharge an at will employee for a reason that violates fundamental public policy. This exception is enforced through tort law by permitting the discharged employee to assert against the employer a cause of action for wrongful discharge in violation of fundamental public policy." Stevenson v. Superior Court, 16 Cal.4th 880, 887 (1997). FEHA's prohibition against disability discrimination may form the basis of a wrongful discharge in violation of public policy claim. See City of Moorpark v. Superior Court 18 Cal.4th 1143, 1159-61 (1998). However, where a plaintiff's FEHA claim fails, a claim of wrongful discharge in violation of the public policy expressed in FEHA also  fails. See De Horney v. Bank

of America Nat'l Trust & Sav. Asso., 879 F.2d 459, 465 (9th Cir. 1989); Esberg v. Union Oil Co., 28 Cal.4th 262, 272 (2002); Hanson v. Lucky Stores, 74 Cal.App.4th 215, 229 (1999).

*Resolution*

Con-Agra sent an interrogatory to Tejada that asked him to explain in detail the facts/basis for his wrongful termination claim. See Clark Exhibit B, Interrogatory No. 8. Tejada responded: "Plaintiff was not offered an administrative position after obtaining his G.E.D. and computer literacy course as requested by Defendant to accommodate his physical disability from the physician defendant requested and provide the administrative position to accommodate my disability." Id. From this response, Tejada is relying either on a failure to accommodate or disability discrimination.

However, as discussed above, both Tejada's FEHA § 12940(a) and § 12940(m) claims fail. The evidence indicates that, due to Tejada's permanent restriction, he was not qualified to perform his job of Color Sorter; further no sweeping job or administrative position was available. In other words, Con-Agra did not violate FEHA. Because Con-Agra did not violate FEHA, Tejada's claim of wrongful termination in violation of the public policy expressed in FEHA necessarily fails as well. See De Horney, 879 F.2d at 465; Esberg, 28 Cal.4th at 272; Hanson, 74 Cal.App.4th at 229. Summary judgment on this claim will be granted.

**4.     Negligence**

Con-Agra argues, *inter alia*, that Tejada's negligence claims are derived from the alleged failure to accommodate. Since the FEHA failure to accommodate claim fails, the negligence claim should also fail.

*Resolution*

The Court agrees with Con-Agra. To recover on a negligence claim, Tejada must show in part that Con-Agra breached a duty of care that it owed to Tejada. See Ann M. v. Pacific Plaza Shopping Center, 6 Cal.4th 666, 673 (1993). Tejada is basically relying on FEHA as the source of the duty owed to him. Since the evidence indicates that Con-Agra did not violate FEHA, it breached no duty owed to Tejada. Tejada's negligence claim falls with his FEHA claims. Summary judgment on Tejada's negligence claim is appropriate.

### 5.    Intentional Infliction of Emotional Distress

Con-Agra argues that Tejada's claim is barred because of workmen's compensation exclusivity and because the conduct complained of does not rise to the level of extreme or outrageous conduct.  The basis for Tejada's claim is that Con-Agra did not give him an administrative position after he received his G.E.D., that Con-Agra sent him to Dr. Fujihara after Tejada inquired about his old job, Dr. Fujihara contacted Jeff Horn after Tejada said he wanted to return to work, and that Dr. Fujihara placed a permanent restriction on Tejada after speaking with Horn.[7]  See Clark Exhibit B, Interrogatory No. 9.  This conduct is not extreme and is a normal part of employment.

*Resolution*

The Court agrees with Con-Agra.  It appears that Tejada's claim is preempted.  California's workmen's compensation scheme bars emotional distress claims that are "caused by misconduct in employment relations involving, for example, promotions, demotions, criticism of work practices, negotiations as to grievances, [as they are] a normal part of the employment environment."  Accardi v. Superior Court, 17 Cal.App.4th 341, 352 (1993).  Sending an injured employee to a company doctor is not abnormal, nor is reviewing that doctor's conclusions about the injury.  The Court also does not see anything abnormal about encouraging an employee to obtain a G.E.D. in case an administrative position opens.[8]  Tejada's claim is barred by the workmen's compensation laws.  See id.; Clark Exhibit B, Interrogatory No. 9.

Alternatively, to recover for intentional infliction of emotional distress, Tejada must demonstrate that Con-Agra engaged in "extreme and outrageous conduct with the intention of causing, or reckless disregard of the probability of causing, emotional distress."  Christensen v. Superior Court, 54 Cal.3d 868, 903 (1991).  For conduct to be sufficiently extreme, it "must be so extreme as to exceed all bounds of that are usually tolerated in a civilized community."  Id.

---

[7] As Con-Agra correctly points out, Tejada's physician, Dr. Guerrero, placed Tejada on a permanent restriction of no stair/ladder climbing and no knee bending.  See DUMF No. 15.  Both Guerrero and Fujihara were in agreement regarding this permanent restriction.  See Tejada Deposition Exhibits 8, 9.

[8] Con-Agra states that it paid Tejada's educational expenses while he obtained his G.E.D. and computer literacy certificate, but cites no evidence in support of the assertion.

13

However, mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities are not sufficiently outrageous. Delfino v. Agilent Techs., Inc., 145 Cal.App.4th 790, 809 (2006). The conduct identified by Tejada is at best a petty oppression or annoyance, it is not "extreme and outrageous conduct." Christensen, 54 Cal.3d at 903; Clark Exhibit B, Interrogatory No. 9. Summary judgment on this claim is appropriate. See Braunling v. Countrywide Home Loans, Inc., 220 F.3d 1154, 1158 (9th Cir. 2000); Schneider v. TRW, Inc., 938 F.2d 986, 992-93 (9th Cir. 1991); Trerice v. Blue Cross of Cal., 209 Cal.App.3d 878, 883 (1989).

### 6.   Punitive Damages

Con-Agra moves for summary judgment on Tejada's punitive damages claim on the basis that no evidence could support a finding of oppression, fraud, or malice. However, the Court has granted judgment on all of Tejada's claims. "[T]here is no separate cause of action for punitive damages – they are only ancillary to a valid cause of action." Caira v. Offner, 126 Cal.App.4th 12, 39 n.20 (2005). The dismissal of Tejada's claims of necessity also disposes of his request for punitive damages. Alternatively, Con-Agra is correct. No evidence indicates that Con-Agra engaged in oppression, fraud, or malice. See Cal. Civ. Code § 3294.

### CONCLUSION

Con-Agra moves for summary judgment on the four causes of action alleged by Tejada. Con-Agra's evidence shows that: (1) Tejada was not a qualified employee for purposes of FEHA § 12940(a); (2) no reasonable accommodation was available given Tejada's permanent restriction; (3) because Con-Agra did not violate FEHA it neither wrongfully discharged Tejada in violation of the public policy in FEHA nor was negligent; (4) Tejada's emotional distress claim is barred by workmen's compensation and there is insufficiently outrageous conduct; and (5) no punitive damages are available due to a lack of viable causes of action and a lack of oppressive, fraudulent, or malicious conduct by Con-Agra. Con-Agra met its initial burden on each of these causes action, which required Tejada to produce contrary evidence. Tejada failed to do so. Summary judgment on all claims is appropriate.

Accordingly, IT IS HEREBY ORDERED that:

1. Con-Agra's motion for summary judgment is GRANTED; and
2. The Clerk is directed to enter judgment in favor of Defendant and against Plaintiff and to CLOSE this case.

IT IS SO ORDERED.

**Dated:   June 3, 2008**                              /s/ Anthony W. Ishii
                                                UNITED STATES DISTRICT JUDGE